### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| |
|---|
| CHRISTOPHER M. ELLINGTON, |
| Plaintiff, |
| v. |
| LIBRARY OF CONGRESS, *et al.*, |
| Defendants. |

Civil Action No. 20-592 (BAH)

Chief Judge Beryl A. Howell

### <u>MEMORANDUM OPINION</u>

Plaintiff Christopher Ellington, who identifies himself as a disabled veteran and is proceeding *pro se*, brings this employment discrimination lawsuit against the Library of Congress ("LOC"), claiming that LOC discriminated against him in declining to hire him for any of three positions that he applied for in 2019 and later retaliated against him when he filed an informal discrimination complaint with LOC's Office of Equal Employment Opportunity and Diversity Programs ("EEO/DP"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), *id.* §§ 12101 *et seq.*  He also alleges defamation, although the factual predicate of this claim is not wholly clear.  LOC moves to dismiss plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 8; Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 8-1; *see also* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 9;

Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 10.[1]  For the reasons set forth

below, LOC's motion is granted.

## I.      BACKGROUND

Between January 1, 2019 and March 25, 2019, plaintiff, who alleges that he is a disabled

veteran, *see* Compl. ¶ 15, ECF No. 1, applied for three separate positions at LOC, *id.* ¶ 1.  He

was neither interviewed nor hired for any of them.  *Id.* ¶ 2.  Upon being denied the positions,

plaintiff asked LOC supervisors and EEO/DP personnel about why he had not been hired or

interviewed.  *Id.* ¶ 21.  He learned from Human Resources supervisor Karen Caldwell that his

"points preference," a numerical advantage in the hiring process to which plaintiff believes he is

entitled, was excluded from "most" of the applications that he submitted, although she did not

identify specifically which of the three applications excluded his points preference.  *Id.* ¶ 17.

Plaintiff further alleges that the hiring officials for each of the three positions were never made

aware of his points preference or his "disability preference," to which he also alleges he was

entitled.  *Id.* ¶ 17.

Caldwell allegedly advised plaintiff that he was not selected for the positions "because of

[s]ection [s]upervisors" and "not because [he was] a veteran, or because [he had] a disability."

*Id.* ¶ 24.  In response, plaintiff explained that his "concern [was that] . . . the [s]ection

[s]upervisors or other [h]iring [s]taff did not adequately consider [his] points preference," as

Caldwell had told him.  *Id.*  Caldwell otherwise refused to speak further with plaintiff about his

applications and allegations of discrimination, even though in plaintiff's view she had already

---

[1]      In a separate filing, plaintiff has also requested oral argument, *see* Pl.'s Mot. Oral Arg., ECF No. 11, which
request is denied because a hearing is not necessary, in light of the narrow legal issues presented by LOC's motion
to dismiss, *see* LCvR 7(f) (authorizing oral hearings at "the discretion of the Court").

admitted to discrimination through her comments about his points preference, and instead referred him to EEO/DP.  *Id.* ¶ 23.

On June 13, 2019, plaintiff submitted to EEO/DP an informal complaint of discrimination, which he submitted as an attachment to his complaint, claiming that LOC's refusal to consider his points preference and disability preference was discriminatory.  *See id.* ¶ 25. Pursuant to LOC regulations, plaintiff was assigned an EEO Counselor to conduct an initial investigation into his complaint and attempt to resolve it informally.  *Id.* ¶ 8.[2]  Plaintiff, however, was unsatisfied with his EEO Counselor, who allegedly provided him information that conflicted with advice given to him by Human Resources and the EEO/DP Chief, Vicki Magnus, and was negligent in investigating plaintiff's complaint.  *Id.*[3]  Plaintiff also alleges that the EEO Counselor refused to answer questions that would have provided him with evidence to prove discrimination against him in the hiring process.  *Id.* ¶ 11.  Specifically, the EEO Counselor, as well as Magnus, refused to tell him the names of the hiring officials for each of the three positions for which he applied.  *Id.* ¶ 9.  EEO/DP explained to plaintiff that they were responsible, not him, for investigating his allegation of discrimination with respect to the hiring for these three positions.  *See id.*

Further contributing to plaintiff's dissatisfaction with the EEO/DP complaint process was his view that this process was neither timely nor adhering to LOC's procedures for such investigations.  Plaintiff alleges that Magnus did "not adher[e] to clear timelines" or LOC procedures for handling EEO complaints.  *Id.* ¶ 27.  For instance, EEO/DP had informed plaintiff that he would be provided with certain information by a specific date, but then missed the

---

[2]     The Complaint refers to this individual as an "EEO Advocate," but LOC's regulations governing the administration of discrimination complaints refer to a Counselor.  *See infra* Part III.B.
[3]     Plaintiff does not know the EEO Counselor's name and claims that LOC refused to provide him with this information.  Compl. ¶ 8.

deadline. *Id.* ¶ 7. Magnus then allegedly lied to plaintiff about why the deadline was missed and provided plaintiff confusing or contradictory advice in response to his questions. *Id.* Plaintiff further alleges that Magnus "acted completely outside of her scope of duties and responsibilities" by colluding with Human Resources, the hiring section supervisors, and plaintiff's EEO Counselor to discriminate against plaintiff, by directing his EEO Counselor to dismiss the complaint without an adequate investigation. *Id.* ¶¶ 27–28. Consequently, plaintiff filed a second informal complaint, evidently by email in July 2019, concerning the delay and alleged improprieties in LOC's handling of his original June 2019 complaint. *See id.* ¶ 6.

Plaintiff filed the instant lawsuit on February 28, 2020. He claims discrimination on the basis of veteran status and disability, retaliation for filing his June 2019 EEO/DP complaint, and defamation. In support of these claims, plaintiff explains that LOC did not interview him and did not place him in certain preference categories to which he was entitled, *id.* ¶ 29, and, further, that he was "most deserving of the positions applied for" in part because he possessed "the knowledge and experience to perform his duties [and] responsibilities," *id.* ¶ 20. He "was specifically trained" for, and had knowledge of, "the positions for which he applied," and alleges that he was "more knowledge[able] and experienced than other candidates that applied and were hired for the position(s) [he] applied for." *Id.* ¶ 30. Plaintiff posits as "highly unlikely," given his experience and preference points to which he was entitled due to his veteran and disability status, that he would not even have been interviewed for any of the three positions for which he applied, and speculates that he would have been at the top of the candidate list, in light of these factors. *Id.* ¶ 31. He alleges that a jury could find that LOC discriminated against him by not interviewing him, and that the candidates who were hired had "less[e]r qualifications" and no

employment preference. *Id.* The Complaint demands compensatory and punitive damages, as well as declaratory and injunctive relief. *See id.* at 15.

LOC seeks dismissal of all of plaintiff's claims or, in the alternative, summary judgment, on the grounds that the Court lacks jurisdiction over plaintiff's defamation claim and that plaintiff has failed to administratively exhaust his discrimination and retaliation claims. *See* Def.'s Mot. at 1; Def.'s Mem. at 12. Plaintiff has filed an opposition to defendant's motion, *see* Pl.'s Opp'n, and presents further argument against dismissal in his request for oral argument, *see* Pl.'s Mot. Oral Arg. at 2–9, which functionally serves as a sur-reply. Defendant's motion to dismiss is now ripe for resolution.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject matter jurisdiction over the claims asserted. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden ... from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for [them] to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006); FED. R.

CIV. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Rule 12(b)(1) grounds for dismissal are examined first "as subject matter jurisdiction presents a threshold question." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014).

### B.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" but instead "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Singletary v. Howard Univ.*, 949 F.3d 287, 295 (D.C. Cir. 2019).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of

the plaintiff. *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir.

2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable

inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health &*

*Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))). The court "need not, however, 'accept

inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the

complaint.'" *Nurriddin*, 818 F.3d at 756 (alterations in original) (quoting *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## III.    DISCUSSION

Plaintiff claims both that Magnus and Caldwell defamed him, and that LOC

discriminated and retaliated against him, in violation of Title VII and the ADA.[4]  These claims

are discussed in turn, and, for different reasons, none survives.

### A.    Plaintiff's Defamation Claim

That the basis for plaintiff's defamation claim is unclear is beside the point, because, as

LOC argues, *see* Def.'s Mem. at 16–17, the Court lacks subject matter jurisdiction over this

claim.  Sovereign immunity bars lawsuits for money damages against the United States and its

agencies absent a specific waiver by the federal government.  *See FDIC v. Meyer*, 510 U.S. 471,

475 (1994); *see also Clark v. Library of Cong.*, 750 F.2d 89, 102–04 (D.C. Cir.1984).  Federal

district courts are granted, pursuant to 28 U.S.C. § 1346(b), "jurisdiction over a certain category

---

[4]    For plaintiff's claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, the
United States has substituted itself as defendant for Magnus and Caldwell.  *See* Def.'s Notice of Substitution of
Party, ECF No. 7.  LOC points out that plaintiff's discrimination claims also name the wrong defendants, *i.e.*, LOC,
Magnus, Caldwell, and the unknown EEO Counselor, when the proper defendant for those claims is Librarian of
Congress Carla Hayden, since Title VII and the ADA permit suits only against the heads of federal agencies in their
official capacities, not the agency itself or its individual employees. *See* Def.'s Mem. at 8; 42 U.S.C. § 2000e-16(c)
(under Title VII and the ADA, an aggrieved employee "may file a civil action . . . in which . . . the head of the
department, agency, or unit, as appropriate, shall be the defendant.").

of claims for which the United States has waived its sovereign immunity and rendered itself liable." *Meyer,* 510 U.S. at 477 (citation, internal quotation marks, and alteration omitted).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, provides a limited waiver of sovereign immunity where a plaintiff seeks monetary damages against a federal agency for certain common law torts committed by federal employees. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484–85 (2006). Although the Library of Congress "is a congressional agency," *Keeffe v. Library of Cong.*, 777 F.2d 1573, 1574 (D.C. Cir. 1985) (citing 2 U.S.C. § 171(1)), the FTCA defines "federal agency" broadly to include "the judicial and legislative branches [and] independent establishments of the United States," and thereby encompasses LOC. 28 U.S.C. § 2671; *see also Hickman v. Library of Cong.*, 74 F. Supp. 3d 329, 331 (D.D.C. 2014). Nevertheless, "[t]he FTCA explicitly excludes libel and slander from its coverage." *Simpkins v. Dist. of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997) (citing 28 U.S.C. § 2680(h)); *see also Thomas*, 394 F.3d at 973, 976 (affirming dismissal of defamation claims because they are not actionable under the FTCA). Plaintiff's defamation claim thus does not fall within the coverage of the FTCA's waiver of sovereign immunity.

Accordingly, the Court lacks subject matter jurisdiction over plaintiff's defamation claim, and LOC's motion to dismiss that claim pursuant to Rule 12(b)(1) is granted.

### B.    Plaintiff's Title VII and ADA Claims

Title VII mandates that "all personnel actions affecting employees or applicants for employment . . . in . . . the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The ADA likewise applies to LOC, *see* 42 U.S.C. § 12209(1), and forbids "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures," *id.* § 12112(a).

Before filing a Title VII or ADA lawsuit in federal court, however, a plaintiff must first exhaust his administrative remedies by seeking relief from the agency that allegedly discriminated against him.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); 42 U.S.C. § 2000e-16(c).  Title VII and the ADA charge the Librarian of Congress with exercising the authority of the Equal Employment Opportunity Commission with respect to LOC, by promulgating regulations to govern the internal administration of complaints of violations of those statutes.  *See* 42 U.S.C. §§ 2000e-16(b), 12117(a); *see also Nichols v. Billington*, 402 F. Supp. 2d 48, 69 (D.D.C. 2005).

Plaintiff alleges that by declining to interview or hire him for the three positions for which he applied, LOC discriminated against him on the basis of his disability and veteran status.  *See* Compl. ¶¶ 3–4, 29–30.  He also alleges that LOC retaliated against him for filing an informal complaint in June 2019, evidently by failing to follow its own timeline and procedures for investigating a complaint and by refusing to tell him who was responsible for the hiring decisions to which he objected.  *See id.* ¶¶ 9–10, 27–28.  LOC argues that plaintiff's discrimination and retaliation claims should be dismissed because he failed to exhaust his administrative remedies before filing the instant lawsuit.  Def.'s Mem. at 7.  Specifically, LOC claims that, after filing an informal complaint with EEO/DP, plaintiff never scheduled an interview or filed a formal complaint, such that EEO/DP was never able to investigate his allegations of discrimination, hold a hearing, or issue a final decision.  *Id.* at 7, 12.

LOC regulations require an applicant who believes that he has been discriminated against to notify EEO/DP, through a written informal complaint, not later than 45 calendar days after the date of the alleged discrimination.  LCR 11-311 § 4(A), ECF No. 8-3.[5]  An EEO/DP Counselor

---

[5]     At the motion to dismiss stage, consideration of "matters outside the pleadings" typically requires that the motion instead be "treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  That conversion,

then "shall conduct a final interview with the complainant not later than 15 workdays after the initial counseling date." *Id.* § 4(D). If the Counselor has not resolved the complaint by the end of that period, she shall notify the complainant in writing of the complainant's right to file a formal complaint within 10 days of receipt of that written notice. *Id.* A formal complaint must also be submitted in writing, through LOC's "Complaint of Discrimination" form. *Id.* § 6(D).

EEO/DP then determines whether the formal complaint satisfies certain requirements for acceptance, including whether it was timely filed and alleges specific facts supporting a determination of discrimination, harassment, or retaliation. *Id.* § 7(B). If the formal complaint is accepted, it is assigned to an investigator to "develop and impartial and appropriate factual record upon which" the EEO/DP Chief may determine whether the allegations of the complaint are true and amount to discrimination. *Id.* §§ 9(B), 10(A)–(B).

Following the EEO/DP Chief's determination, a complainant may request reconsideration by the Chief or a hearing before a third-party mediator. *Id.* §§ 10(C)–(D), 11(B)–(C). Following a hearing, if one is requested, the mediator prepares a report and transmits it to the Librarian of Congress, *id.* § 11(D)–(H), who is ultimately responsible for the final decision on the complaint, *see id.* § 12(A). "Within 90 days of receipt of notice of final action taken by" LOC, a

---

however, is not triggered by consideration of "documents incorporated into the complaint by reference [or] matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, consideration of plaintiff's June 2019 informal complaint and the LOC regulations establishing the exhaustion regime to which plaintiff's discrimination claims are subject is appropriate. *See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding that administrative documents were properly considered in ruling on defendant's motion to dismiss, in particular because "they [were] referred to in the complaint and [were] integral" to one of plaintiff's claims); *Sierra v. Hayden*, 254 F. Supp. 3d 230, 237–38 (D.D.C. 2017) ("In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are 'referred to in the complaint, . . . are integral to [the plaintiff's] exhaustion of administrative remedies, and are public records subject to judicial notice.'" (alteration and omission in original) (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013))); *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 89 & n.6 (D.D.C. 2012).

complainant may file a lawsuit in federal district court.  42 U.S.C. § 2000e-16(c); *see also id.* §§ 2000e-5(f), 12117(a); 29 C.F.R. § 1614.407(a).

Although plaintiff filed an informal complaint with EEO/DP, he did not subsequently file a formal complaint once he was informed that his informal complaint had not been resolved and advised of his right to file a formal complaint.  Indeed, Plaintiff acknowledges that he has not received a Notice of Right to Sue letter from EEO/DP.  Compl. at 5.  Plaintiff nevertheless disputes the characterization of his complaint as "informal," noting that his attachment to the complaint form styled itself as a formal complaint.  *See* Pl.'s Mot. Oral Arg. at 6–7.  The LOC form that plaintiff completed and submitted, however, was the "Allegation of Discrimination" form used for informal complaints.  Plaintiff has failed to administratively exhaust his discrimination and retaliation claims because he filled out only the "Allegation of Discrimination" form, and did not also subsequently complete and submit the "Complaint of Discrimination" form used for formal complaints—not because he failed to include the word "formal" in the header to the document he attached to his "Allegation of Discrimination" form, *see id.* at 7.

Plaintiff also objects that even if he did not file a formal complaint, his June 2019 informal complaint complied with § 7 of LCR 11-311, which governs EEO/DP's acceptance of formal complaints.  *See* Pl.'s Mot. Oral Arg. at 3.  Yet that section expressly requires the submission of a formal complaint on the "Complaint of Discrimination" form, LCR 11-311 § 7(B)(1), and provides that "EEO/DP shall accept a formal complaint for processing under this regulation only if" that requirement, among the other requirements of § 7, is met, *id.* § 7(A). Plaintiff's informal complaint therefore did not comply with § 7.

11

To the extent plaintiff argues that LOC should have treated his informal complaint as a formal complaint, this too is unpersuasive. As explained, only the filing of a formal complaint launches the investigative and adjudicative processes, and without the filing of a formal complaint, an investigation and subsequent final determination on plaintiff's allegation of discrimination could not occur.  Filing a formal complaint signals to LOC that a complainant's grievance remains unresolved and thus that an investigation is necessary.  Separately requiring an informal complaint, and treating informal complaints differently than formal complaints, gives LOC an opportunity to attempt to resolve a complaint quickly and informally if possible, before committing to a more intensive and time-consuming full-scale investigation.  *See* LCR 11-311 § 4(C).  Moreover, this two-tiered complaint system is a commonplace requirement of administrative exhaustion.  *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1350 (D.C. Cir. 2012) (explaining that to properly administratively exhaust discrimination claim, plaintiff needed to first file an informal complaint and undergo EEO counseling, and then file a formal complaint, and noting that "[f]iling a formal complaint is a prerequisite to exhaustion"); *see also, e.g.*, *Sierra*, 254 F. Supp. 3d at 239–40 (rejecting plaintiff's argument that she had administratively exhausted her discrimination claim against LOC by "adher[ing] to the purpose of [LOC's] regulations" notwithstanding that she did not actually comply with those regulations).

Finally, even if plaintiff's informal complaint had sufficed to administratively exhaust his claims, the instant lawsuit would nevertheless be time-barred.  As explained, a complainant is required to file a lawsuit in federal district court within 90 days of LOC's final action on his complaint.  Plaintiff submitted his informal complaint on June 13, 2019.  Supposing that complaint alone sufficed to administratively exhaust his claims, which it did not, and factoring in the 15 days that EEO/DP is allotted by regulation to resolve an informal complaint, *see* LCR

12

11-311 § 4(D), plaintiff would have needed to file a lawsuit by September 26, 2019.  The instant lawsuit, filed February 28, 2020, misses that deadline by more than five months.  Thus, plaintiff failed to administratively exhaust his claims, which would not have been timely in any event, and his ADA claims are therefore dismissed without prejudice.[6]

Plaintiff's claim for discrimination on the basis of veteran status is another matter.  No cause of action is provided under any statute plaintiff cites for discrimination on this basis.  *See* 42 U.S.C. § 2000e-16(a) (forbidding discrimination on the basis of race, color, religion, sex, or national origin); *id.* § 12112(a) (forbidding discrimination on the basis of disability); *see also Atanus v. Sebelius*, 652 F. Supp. 2d 4, 12 (D.D.C. 2009) (noting that "non-veteran status is not among the protected classes of Title VII"); *Daniels v. Wilkie*, Civil Action No. 17-1543 (RC), 2018 WL 2324085, at *3 n.4 (D.D.C. May 22, 2018) (transferring employment discrimination claim based on veteran status and noting that it would likely be dismissed by transferee court for lack of subject matter jurisdiction).  Accordingly, that claim is dismissed with prejudice.[7]

## IV.    CONCLUSION

For the foregoing reasons, LOC's motion to dismiss is granted.  The Court lacks subject matter jurisdiction over plaintiff's defamation claim, and plaintiff has not administratively

---

[6]    LOC regulations require that a complainant file a formal complaint not later than ten workdays following notification that the informal complaint has not been resolved.  *See* LCR 11-311 § 4(D).  The ten-day window has now long since closed, as plaintiff was notified that his informal complaint had not been resolved on July 1, 2019.  *See* Email from Jorge Rice to Christopher Ellington (July 1, 2019), ECF No. 8-3.  Nonetheless, EEO/DP has the authority to extend that time limit if it determines "that the complainant was prevented by circumstances beyond his[] control from submitting the complaint on time."  LCR 11-311 § 6(F).

[7]    Plaintiff's complaint also alleges a violation of Arizona Revised Statutes § 25-505.01(m), which concerns enforcement of child support and spousal support obligations.  The complaint provides no clue as to the factual basis of this claim or the Court's subject matter jurisdiction to consider it.  Plaintiff has thus not pled "sufficient factual matter" to state a plausible claim to relief, *Wood*, 572 U.S. at 757–58 (quoting *Iqbal*, 556 U.S. at 678), and this claim is therefore dismissed.

exhausted his discrimination and retaliation claims.  An Order consistent with this Memorandum

Opinion will be entered contemporaneously.

    Date: December 2, 2020.


                                            _____
                                            BERYL A. HOWELL
                                            Chief Judge